BILLY VANN v. STATE.

No. A-3738.    Opinion Filed May 29, 1922.
(207 Pac. 102.)

(Syllabus.)

1.    **Forgery—Evidence of Mere Conspiracy to Obtain Its Proceeds, Insufficient.** Where a criminal statute defines the crime of "forgery" as the doing of some particular act or acts, the accused will be held amenable for the doing of only such acts as come properly within the definition; and where the evidence fails to show that the accused committed the forgery, or aided or abetted in its commission, but shows that the accused, after the forgery was complete, conspired with the forger and others to obtain the proceeds of the forgery, the accused will not be held amenable for the original offense.

2.    **Same—Conspirator as Accessory After Fact.** Under such circumstances, under our statute, he is an accessory (after the fact) only, and cannot be prosecuted as a principal, jointly or separately, for the original forgery.

Appeal from District Court, Muskogee County; Benjamin B. Wheeler, Judge.

Billy Vann was convicted of forgery in the first degree and sentenced to seven years' imprisonment in the state penitentiary, and he appeals. Reversed.

Gavin & Porter, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J.  Billy Vann, in this opinion referred to as the defendant, was, jointly with W. A. Rentie, Tom Peters, Freddie Rentie, Roy Rentie, and Rebecca Mays, charged with the crime of forgery in the first degree, by information filed on June 17, 1918.  This prosecution grew out of a conspiracy entered into between W. A. Rentie, Freddie and Roy Rentie, Rebecca Mays, and Tom Peters to have Rebecca Mays, a young negro girl, impersonate one Katie Thompson, a Creek freedman allottee of land. It was agreed that Rebecca Mays should sign, execute, and acknowledge a deed to 80 acres of the Katie Thompson allotment, and that the conspirators should collect the purchase money, to be divided among themselves for their own use and benefit. Pursuant to this conspiracy, Rebecca Mays represented to J. A. Evans, agent for J. C. Smith, that she was Katie Thompson and pretended to sell this particular 80 acres of land to Smith, impersonating Katie Thompson and signing her name to the deed, acknowledging its execution as Katie Thompson, and receiving therefor a part of the agreed purchase price from Evans. The balance of the purchase price, about $1,100, was to be paid so soon as the abstract of title was examined and approved.

After the forgery of this deed as stated, on the 18th day of May, and after the deed had been delivered and recorded on the 20th day of May, Evans, the agent of the grantee named in the deed, not being satisfied that the grantor was indeed Katie Thompson, inquired of Billy Vann, this defendant, whether he knew Katie Thompson.  The defendant stated that he knew Ned Thompson well and knew that he had a daughter.  The evidence is conflicting as to whether the defendant knew that the daughter's name was Katie.  In order to avoid paying the balance of the purchase price to the

wrong person, on the 21st day of May Evans requested the defendant Vann to go with him to the place where Rebecca Mays was staying in Muskogee, for the purpose of identifying her as Katie Thompson. Evans, Fred Rentie, W. A. Rentie, Tom Peters and the defendant drove to the place where Rebecca Mays was, and the defendant identified her, or partially identified her, as being Katie Thompson. There is evidence tending to show that for this identification Vann was to be compensated by payment to him of a part of the unpaid balance of the purchase price.

Later, upon further investigation, Evans ascertained that Rebecca Mays had impersonated Katie Thompson, and he thereupon caused the arrest of all the parties implicated in the conspiracy. Fred Rentie, Roy Rentie, and Rebecca Mays pleaded guilty to the information. As to what disposition was made of the charge against the other defendants does not appear of record here.

The charging part of the information upon which the conviction of this defendant was based recites that the defendants, naming them, did on the 17th day of May, 1918, knowingly, willfully, unlawfully, fraudulently, falsely, and feloniously make and forge a certain deed and instrument in writing, the same purporting to be the act and deed of one Katie Thompson and purporting to convey the rights and properties of the said Katie Thompson in the land described therein, with the unlawful and felonious intent to defraud J. C. Smith.

It is urged by the defendant that there is no testimony in this record indicating that he was in any way connected with the original conspiracy to forge this instrument; and that he had nothing whatever to do with the transaction until after the instrument was forged, delivered, and recorded; and that the testimony is therefore wholly insufficient to support the verdict as to this defendant, finding him guilty of forgery.

A careful examination of all the evidence supports the claim that this defendant had nothing whatever to do with this transaction until after the deed had been forged, delivered, and recorded. This brings us to the question of whether the defendant can be held upon a charge of forgery where he participated only in the fraudulent scheme to procure money by reason of a forged deed, after the deed had been uttered, delivered, and recorded by means of the scheme perpetrated by the original conspirators.

Section 2104, R. L. 1910, is as follows:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present are principals."

Section 2105 defines "accessories" as follows:

"All persons who, after the commission of any felony, conceal or aid the offender, with knowledge that he has committed a felony, and with intent that he may avoid or escape from arrest, trial, conviction, or punishment, are accessories."

Section 2107 provides for the punishment of accessories:

"Except in cases where a different punishment is prescribed by law, an accessory to a felony is punishable by imprisonment in the state penitentiary not exceeding five years, or in a county jail not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment."

It will be observed that this defendant was not prosecuted as an accessory, but was prosecuted as a principal, under section 2621, R. L. 1910, which is, in part, as follows:

"Any person who, with intent to defraud, forges, counterfeits or falsely alters:

"First. Any will or codicil of real or personal property, or any deed or other instrument being or purporting to be the

.act of another, by which any right or interest in real property .is, or purports to be, transferred, conveyed or in any way ,changed, or affected. * * *

"Is guilty of forgery in the first degree."

The gist of the offense under this section of the statute is the uttering of the false or forged instrument, coupled with the intent to defraud. Actual fraud need not in fact be alleged or proved. The crime is complete so soon as the false or forged signature is made, with the fraudulent intent, even though that intent may fail of realization. Arnold v. State, 15 Okla. Cr. R. 519, 178 Pac. 897; 26 Corpus Juris, 906, 907; 12 R. C. L. 152.

In the case of State v. Lingafelter, 77 Ohio, 523, 83 N. E. 897, it was held that, according to the Ohio statutes (like our own), whoever before the consummation of an offense aids, abets, or procures another to commit the offense, may be prosecuted and punished as if he were the principal offender; but that, where one is indicted and placed on trial for the crime of forgery, and the evidence fails to show that the accused committed the forgery or aided and abetted in its commission, but tends to prove that said offense had been committed by another and that the accused person performed acts in the interest of the forger for the purpose of covering up his forgery and of preventing his detection and punishment, such person cannot be convicted of the forgery. We see no distinction in the application of the principle under consideration where a forgery is committed by a number of persons acting together and where the forgery was committed by one acting alone. If Rebecca Mays, acting alone, had committed and consummated this forgery, clearly a subsequent conspiracy formed at a later day with Bill Vann to divide the benefits of the forgery would not have made him a party to the forgery.

Now, if the defendant and original conspirators had been charged with the crime of false pretense or with criminal conspiracy, any person joining in, aiding and abetting in the unlawful enterprise before its consummation would be guilty as a principal; but this rule of law cannot be invoked where the crime charged is one that has been fully consummated and the criminal object of the conspiracy to commit the crime charged is at an end before the defendant is in any way implicated in the enterprise, or has any knowledge of it; any person who thereafter seeks to profit by reason of the unlawful enterprise is guilty, if at all, of some other offense. State v. Lingafelter, supra.

If there are two or more independent felonious conspiracies entered into by some of the parties, the participants in either will be held for the results of only the conspiracy in which he may have participated, and will not be held accountable for another conspiracy with which he was not connected, although some of the parties took part in both conspiracies.

Under our statute above quoted, section 2104, R. L. 1910, making accessories before the fact principals, there are two things that must concur in order to justify the conviction of one as an accessory before the fact: First, he must have advised or urged the parties, or in some way aided them to commit the offense, although not present when the offense was committed; second, the crime must have actually been committed by the principal.

All persons who, after the commission of the felony, conceal or aid the offender, are accessories. From this it will be seen that an accessory after the fact, the only kind known under our law, is not an accomplice nor a coconspirator. One indicted for the crime of robbery as a principal cannot be convicted of the offense charged in the indictment if the evidence shows that he was only an accessory after the fact. People

v. Gassaway, 28 Cal. 405; Bradley v. State, 2 Ga. App. 622, 58 S. E. 1064; People v. Chadwick, 7 Utah, 134, 25 Pac. 737.

There is an important and material difference between an accessory before the fact, in our state a principal, and an accessory after the fact. If the accused is found guilty as an accessory to the crime before its commission, he may be punished as a principal; but, if a person be found guilty as an accessory after the fact, the statute provides another procedure and penalty. State v. Phillips, 18 S. D. 1, 98 N. W. 171, 5 Ann. Cas. 761, and notes; State v. Umble, 115 Mo. 452, 22 S. W. 378; Wharton's Crim. Evidence, § 440; 1 R. C. L. 148.

Where a criminal statute by express terms defines a crime as the doing of some particular act, the accused will be held amenable for the doing of only such acts as come properly within the definition. An accessory, under our statutes, is not so connected with the crime, and is only connected with the offender and his interests after the offender has committed the original offense. Accessories therefore cannot be guilty of the commission of the main offense. State v. Strong, 52 Tex. Cr. R. 133, 105 S. W. 785.

In this case there is nothing in the record to show that this defendant had anything to do with or had any knowledge of the execution of the forged deed or of the scheme to forge such instrument prior to its execution, acknowledgment, and delivery. He became implicated in the affairs of these conspirators after the deed was delivered and recorded, by forming and entering into another conspiracy with those implicated in the forgery, whereby they were to procure the balance of the purchase price of the land. By his conduct in confirming the statements of those concerned in the forgery, to the effect that Rebecca Mays was in fact Katie Thompson, he secured a further payment on the purchase price of the land, and the

conspirators expected thereby to procure the entire balance of such purchase price.

The defendant was not charged as an accessory after the fact or with criminal conspiracy to defraud, as principal. He was charged with forgery in the first degree. The evidence and the instructions of the court related to that offense alone. The court instructed the jury, in part, as follows:

"Any person who, with intent to defraud, forges, counterfeits, or falsely alters any deed or other instrument purport- to be the act of another, by which any right or interest in real property is, or purports to be, transferred, conveyed, or in any way changed or affected, is guilty of forgery in the first degree."

To the same effect are the allegations in the information. It follows, therefore, that before this defendant can be held for forgery he must in some way be shown to have been culpably implicated in the forgery or the conspiracy to perpetrate the forgery before it was consummated. An independent crime or conspiracy to profit by the forgery after its consummation will not relate back to the original conspiracy, so as to make him a principal as an aider or abettor.

We conclude, therefore, that the defendant, Billy Vann, was not guilty of the crime of forgery by aiding and abetting those implicated in this forgery, for the simple reason that he did not join in or aid in that transaction. The evidence does disclose a culpable and felonious intent to defraud, for which he should have been prosecuted in an appropriate separate action. For the reasons stated, the other errors urged by the defendant need not be noticed.

The cause is reversed and remanded for further action not inconsistent with this opinion.

DOYLE, P. J., and MATSON, J., concur.