Joe Riley SHOCKLEY, Sr., Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–647.

Court of Criminal Appeals of Oklahoma.

Aug. 20, 1986.

George W. Butner, Wewoka, for appellant.

Michael C. Turpen, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Joe Riley Shockley, Sr., was convicted in the District Court of Hughes County, Case No. CRF–80–80 of Harboring a Fugitive From Justice for which he received a sentence of seven years' imprisonment, and from which he appeals raising five assignments of error.

Briefly stated, the facts show that on November 2, 1980, shortly before 1:00 p.m., Hughes County Sheriff Orville Rose and Deputy Sheriff Houston Yeager arrived at the home of the appellant to talk to his fifteen-year-old son, Joe Riley Shockley, Jr., concerning the shooting of Chester Fain in Holdenville shortly after noon of that day. The appellant came outside the house to meet the sheriff and deputy in the front yard. While they were talking, the sheriff observed Joe, Jr. and his uncle, Raymond Shockley, inside the house, moving toward the back room. The appellant, in response to Sheriff Rose's request to talk to Joe, Jr., informed the sheriff that Joe, Jr. and his uncle Raymond were in Commerce, Oklahoma. He gave the sheriff a telephone number where they could be reached after the sheriff stated that he

needed to question Joe, Jr. concerning the shooting of Chester Fain. Sheriff Rose and Deputy Yeager then left, but stopped their car about 250 to 300 yards away to watch the home, and they observed a 1974 Ford LTD leave the residence about fifteen minutes later. After following the vehicle for some distance, they stopped it and arrested Raymond, and Joe, Jr., the driver, who was carrying $1,002.00 at the time.

At the trial, Mrs. Fain testified that she witnessed Joe, Jr. shoot her husband. The incident occurred immediately after she had relayed a telephone message to Mr. Fain from the appellant, that he wanted to meet her husband. A few minutes after the shooting, she returned to her house to telephone an ambulance and found the phone was ringing. When she answered, the appellant asked her, "Is he dead yet?"

Appellant denied that he placed the telephone calls and testified that he did not know his son was in the house at the time that Sheriff Rose was there.

I

■ As his first assignment of error, the appellant argues that 21 O.S.1981, § 440 is unconstitutional because it is overbroad and vague. He urges that it is overbroad because it conflicts with a parent's legal duty to support his child and it conflicts with the parent's right to counsel his child prior to his making a statement to a law enforcement officer. 10 O.S.1981, § 4, 10 O.S.Supp.1984, § 1109(A). He urges that the statute is vague because it does not provide any specific standard of conduct to a parent toward a child who has committed what by statute constitutes a felony. We are not persuaded. The testimony shows that appellant intentionally misled the sheriff by denying that his son was in the house when the appellant knew otherwise, and knew further that Joe, Jr., whom the authorities had probable cause to arrest without a warrant, was a suspect in a shooting. The evidence does not show that he merely furnished his son support and counsel. Under these facts the statute may be constitutionally applied. A person

to whom a statute may be constitutionally applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before this Court. See *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Therefore, this assignment of error is without merit.

II

■ For his second assignment of error, the appellant alleges that the trial court erred in overruling his motion to dismiss, and motion to quash the information based on insufficient evidence. Referring to the second amended information, he shows that he was charged with "Harboring Fugitive From Justice" and cites decisions of this Court for the proposition that a fugitive from justice is one who leaves the jurisdiction after committing a crime. He argues that because his son had not left the state, he was not a fugitive from justice. However, the issue is whether the information sufficiently apprised the appellant of the charges against him. See *Cole v. State*, 15 Okl.Cr. 361, 177 P. 129 (1919), and *Smith v. State*, 572 P.2d 262 (Okl.Cr.1977). An examination of the information reveals that it stated the charge in statutory language, cited the statute, and stated sufficient facts to charge a crime.

Appellant further asserts that because his son was a minor, he could not be considered a criminal and therefore, the appellant could not have harbored a criminal. Where the principal is a minor, the conviction of the accessory depends upon whether there is sufficient evidence presented to show that there was a principal guilty of the crime charged, and whether or not that principal was ever charged with that offense. *State v. Truesdell*, 620 P.2d 427 (Okl.Cr.1980). The fact that our Juvenile Code (Title 10) classifies a particular principal as a delinquent instead of a felon will not allow the accessory to avoid the illegality of his own act. Therefore, this assignment of error is meritless.

## III

■ For his third assignment of error, the appellant alleges he was denied a fair trial by two remarks of the prosecutor during his closing argument. In the first remark the appellant alleges that the prosecutor implied that the appellant was at the scene of the shooting, which remark drew an objection as a fact not in evidence. The prosecutor replied that he was not referring to the appellant, the court agreed, and allowed the argument to proceed after admonishing the prosecutor to stay within the evidence. Continuing the argument, the prosecutor stated that right after the shooting occurred, "they had a meeting." Defense counsel again objected on the same ground. Sustaining the objection, the court admonished the prosecutor that he should use facts in evidence upon which such a meeting could be inferred, but that he should not state the conclusion "as squarely as that." The context of the first remark reveals that although it was ambiguous, the remark was clarified by the prosecutor's reply to the objection. The second remark appears to have been a reasonable inference from the evidence since the appellant must have learned about the shooting from his son, before he telephoned Mrs. Fain. Moreover, if error, we find that it was cured by the admonishment to counsel, that it was not so prejudicial as to have determined the verdict, and is not so grossly improper as to require reversal or modification. See *Frazier v. State*, 607 P.2d 709 (Okl.Cr.1980). Accordingly, this assignment of error is without merit.

## IV

■ As his fourth assignment of error, the appellant alleges that the court erred in rejecting his requested jury instruction. The instruction is taken from 10 O.S.1981, § 20 and reads "Neither parent or child is answerable as such, for the acts of the other." Appellant claims that this instruction was necessary because a considerable amount of the testimony concerned the acts of his son, and he feared that he would be convicted for his son's actions. Having reviewed the instructions, we find that they fairly and accurately state the applicable law, and they adequately discuss the knowledge required for conviction and the limitation of appellant's culpability. It is well settled that the instructions to be given the jury are left to the trial court's discretion with which we shall not interfere as long as the instructions, when considered as a whole, fairly and accurately state the applicable law. *Hammer v. State*, 671 P.2d 677 (Okl.Cr.1983). Therefore, this assignment of error is also meritless.

## V

■ As his fifth assignment of error, the appellant alleges that the evidence was insufficient to support the conviction because the State did not prove that the minor was seeking to escape arrest. He supports this allegation upon portions of the testimony from Sheriff Rose and Deputy Yeager that during their discussion with the appellant, they merely asked to talk to his son, they did not indicate that they intended to arrest him. However, the intentions of the law officers is irrelevant to the issue of whether or not Joe, Jr. was seeking to escape arrest. One may commit a crime, attempt to avoid detection and arrest before any authority becomes aware that a crime has been committed. "Seeking to escape arrest" is determined by the intentions of the principal, which is shown circumstantially. In the case before us, Geneva Fain testified that she observed Joe, Jr. shoot her husband. During his investigation, Sheriff Rose observed the son in the appellant's house moving away from the living room window where he was observed. Shortly thereafter, Joe, Jr. took the appellant's car and left with a large sum of money. From these facts, the jury could reasonably and logically find that Joe, Jr. intended to escape arrest.

> It is the fundamental rule that where there is evidence, although ... circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility, and probative effect of such evidence is for the

jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence. [Citation omitted].

*Box v. State*, 505 P.2d 995, 997 (Okl.Cr. 1973). We find that the evidence supports the conviction.

Therefore, the judgment and sentence is AFFIRMED.

BRETT, J., concurs.

PARKS, P.J., concurs in results.